IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARIANO BARRON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-014-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner | § | |
| of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM ORDER AND OPINION

Pursuant to 42 U.S.C. § 405(g), Mariano Barron seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court finds that the Commissioner's decision should be affirmed and Barron's case be dismissed.

### I. STATEMENT OF THE CASE

Barron filed applications for SSI and DIB on April 21, 2013, alleging impairments that were disabling as of June 20, 2005. Those applications were denied initially on July 5, 2013 and again on reconsideration on August 29, 2013. Barron requested a hearing, which was held before an Administrative Law Judge on June 25, 2014 by video, with Barron in Abilene, TX and the ALJ in Fort Worth, TX. The ALJ issued a decision on September 15, 2014 finding Barron not disabled.

Specifically, the ALJ established during step one that Barron had not engaged in substantial gainful activity since June 20, 2005. (Doc. 13-3, 19). At step two, the ALJ determined Barron had the severe impairments of back pain with sciatica, carpal tunnel syndrome, anxiety, and depression. (Doc. 13-3, 19). In step three, the ALJ found that Barron did not meet or equal in combination one of the impairments listed in 20 C.F.R. § 404(p). (Doc. 13-3, 20). The step three analysis continued, with the ALJ ruling that Barron retained the RFC to "perform sedentary work as defined in 20 C.F.R. 4040.1567(a) and 416.967(a) except the claimant is limited to non-complex tasks, with no overhead reaching with the dominant upper extremity, and no repetitive fingering with the dominant hand." (Doc. 13-3, 20). At step four, the ALJ concluded Barron was unable to return to past relevant work, and at step five ruled that the Administration met its burden by showing there were sufficient opportunities in the economy which Barron could perform, and that Barron was therefore not disabled. (Doc. 13-3, 23-24).

Barron applied to the Appeals Council for review, which denied that review on November 10, 2015. Therefore, the ALJ's ruling is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to his pleadings, testimony at the administrative hearing, and the administrative record, Barron was 48 years old and lived with his wife at the time of the administrative hearing. He had completed some high school education, but reported finishing at different grade levels as well as enrollment in special education. His previous employment

consists of manual labor. He complains that his physical and mental impairments render him disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "Substantial gainful activity is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and

whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence is "more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Barron raises three issues on appeal. He claims that the ALJ did not use the proper framework in evaluating mental disabilities, that the ALJ improperly rejected a treating physician's medical opinion, and that the ALJ made an improper credibility determination.

### A. Mental Impairment Evaluation and Harmless Error

Barron first alleges that "the ALJ failed to properly evaluate mental impairments which he acknowledged to be severe pursuant to the Commissioner's Psychiatric Review Technique." (Doc. 16, 6). Barron contends this is true because "[w]hile the ALJ concluded that [he] has moderate limitations in concentration, persistence, or pace, this is not sufficient as an assessment" since the "ALJ never mentioned either sections 12.04, 12.06, or 12.07 of Appendix

1 in determining whether [he] has an impairment which satisfies the requirements of a listed impairment in Appendix 1." (Doc. 16, 6) (citations omitted).

Defendant argues that any error in the ALJ's failure to explicitly follow the proscribed psychiatric review technique is harmless, as the ALJ made a "complete evaluation of [the claimant's] mental impairments and assessment of ... mental limitations[,]" and failed only to be explicit in following the required steps. (Doc. 18, 6). Barron responds by claiming that the ALJ's failure to consider and incorporate into the RFC a limitation in social functioning was prejudicial. (Doc. 19, 2). An error is harmless if correcting it would not produce a different result and prejudicial if it would. *See Mays v. Bowen*, 837 F.2d 1362 (5th Cir. 1988) ("The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time. Remanding this case ... would produce the same result while wasting time and resources.") (internal citation omitted).

So, Barron needs to show something more than that the limitation "may have affected Barron's ability to perform the jobs" or that there is an absence of "evidence that a moderate limitation in social functioning would not have affected such jobs...." (Doc. 19, 3). Stated differently, Barron's burden is to show specifically that correcting the error produces a different outcome and not only to opine that it might do so.

In this case, Barron does not meet that burden. Barron points to the limitation in social functioning and argues that failure to incorporate it into the RFC and hypothetical question to the vocational expert (VE) renders the determination that Barron can perform other work unsupported by substantial evidence. (Doc. 19, 4). This mischaracterizes substantial evidence. Substantial evidence is a basis sufficient for a reasonable person to rely on in supporting a conclusion. *Watson*, 288 F.3d at 215. Barron is required to show that no reasonable person could

reach the same conclusion as the ALJ from the record evidence, and does not meet that burden by merely highlighting evidence which may seem to contradict the ALJ.

So Barron's claim is best construed as alleging that the error is not harmless is to show that no reasonable person could reach the same conclusion as the ALJ after reviewing the record if the putative limitation were analyzed under the framework. Barron argues that the ALJ over-relied on an evaluation by Dr. Scales which does not satisfy the required technique and that Dr. Scales' assessment of a moderate limitation in social functioning was insufficiently considered. (Doc. 19, 2). Barron first alleges error in the ALJ's neglecting to perform the required technique explicitly in the decision and relying instead on Dr. Scales' opinion, then argues that the error cannot be harmless because that same opinion was ignored, at least in part.

If Barron's briefing is read as arguing that Dr. Scales' opinion was inconsistently considered, with some portions being given too much weight and others not enough, then Barron still needs to show that no reasonable person could locate in the record a basis for finding that claimant has no social functioning limitation to support the claim that it is not supported by substantial evidence. One page after reporting that the claimant had moderate difficulties in social functioning, Dr. Scales noted that he was active and polite, was able to go out daily, shop, pay bills, and manage his own funds. (Doc. 13-4, 64). In the ruling, the ALJ found that

> ... the claimant is able to attend to his personal care needs, watch TV, read, perform household duties, prepare meals, go outside, and go shopping. The claimant also spends time with others, visits with family, and goes to church. Furthermore, he can count change, handle a savings account, and use a checkbook or money order. ... [T]he overall evidence indicates he can still perform various activities. These activities are fully consistent with the residual functional capacity detailed above.

(Doc. 13-3, 22) (internal citations omitted). The ALJ explicitly provides a basis for declining to incorporate a social function limitation into the RFC and there is no reason to believe that

framing the evidence as required would change his analysis. Barron fails to show that there is not substantial evidence supporting that RFC determination, and therefore fails to show that any error in failing to conform exactly to the required technique was prejudicial.

### B. Medical Opinion Evidence and Residual Functional Capacity

Barron next argues that the ALJ improperly rejected the opinion of a treating physician, Dr. Livingston. Specifically, Barron alleges that Dr. Livingston offered opinions limiting range of motion of the neck, right shoulder, and lower back, limiting the claimant to lifting and carrying 10 pounds, standing and walking for two hours in an eight-hour workday, sitting for two hours in an eight-hour workday, and being able to shift position at will and lie down at unpredictable intervals. (Doc. 16, 7).

An ALJ must analyze a treating physician's opinion if it is rejected for a non-specialist and non-examining medical expert's opinion when there is no "competing first-hand medical evidence" in the record. *Newton*, 209 F.3d at 458. An ALJ need not specifically list evidence accepted and rejected in reaching findings. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). So, if there is reliable first-hand medical evidence in the record which is consistent with the ALJ's decision, it is not error under *Newton* to fail to explicitly weigh and consider the treating physician's opinion. Barron's burden is not to highlight evidence that may tend to contradict the ALJ's ruling, but rather to show that there is no substantial evidence supporting that ruling.

In this case, the Commissioner notes multiple first-hand medical opinions which conflict with Dr. Livingston's opinion. (Doc. 18, 15-17). Barron argues that this is *post hoc* rationalization not permitted as the ALJ did not refer to competing first-hand medical evidence in the opinion. (Doc. 19, 6). In this instance, however, Defendant's brief is illustrating what

evidence the ALJ was referring to in noting that "[t]he opinion of [Dr. Livingston] is given limited weight because it is inconsistent with the medical evidence of record and not supported by the objective findings" and not creating reasoning absent from the ALJ decision. (Doc. 13-3, 22). Again, an ALJ need not specifically list evidence accepted and rejected in reaching findings. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Barron additionally argues that 20 C.F.R. §§ 404.1527 and 416.927 also requires the ALJ to further analyze Dr. Livingston's medical opinion. Section 404.1527(c)(2) states that a treating source's medical opinion will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" It also states later that more weight will be given to an opinion generally consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). Section 416.927 contains identical language.

To show that reversible error occurred because the ALJ did not set out in the opinion the *Newton* or § 404.1527 analysis of a rejected treating source, Barron would need to show that there was not conflicting first-hand medical evidence sufficient to support the ALJ's conclusions. Barron has not met that burden here.

### C. Credibility Evaluation

Barron argues finally that the ALJ impermissibly questioned the claimant's credibility without analyzing required factors or pointing to contradictory evidence. (Doc. 16, 12).

> No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."

SSR 96-7p, 1996 WL 374186. "[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements...." *Id.* But, "[a]n individual's statements about the intensity and persistence of pain or other symptoms ... may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

"[N]ot all pain is disabling" and "subjective evidence need not be credited over conflicting medical evidence." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). Like the plaintiff in *Anthony*, the claimant here is able to, according to the record, maintain personal hygiene, attend church, and visit family. *Id.* at 296; Doc. 13-3, 22; Doc. 13-7, 233. Here, the ALJ is entitled to discredit in part the subjective testimony not because it conflicts only with the objective medical evidence but with the record as a whole, including some assertions made by the Barron himself.

Although the ALJ did not cite to the record in contrasting these inconsistencies while making the credibility determination, he noted that he made the credibility determination after having "reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision." (Doc. 13-3, 23). The ALJ detailed the inconsistencies:

> ... there are inconsistences in the evidence of record concerning the claimant's description of his symptoms and limitations. He alleges extreme functional limitations; however, the longitudinal medical evidence of record ... does not support his allegations. The claimant's pain and mental health allegations are not credible in light of the medical evidence. While the claimant has complained that his pain level appears to be increasing with constant pain, the objective findings have not changed. His condition does not show deterioration or any additional medical difficulties. The claimant's condition has stabilized and his physicians have recommended that the claimant proceed with only conservative treatment. In addition, the claimant worked after the alleged onset date of disability performing various services. The fact that his impairments did

> not prevent the claimant from working at that time suggests that it would not currently preclude work. Overall, the medical evidence of record strongly suggests that the claimant's physical and mental health symptoms may not be as severe as he alleged.

(Doc. 13-3, 22-23).

Although "[I]t is not sufficient for the adjudicator to make a single, conclusory statement" that the claimant's allegations have been considered, the ALJ in this case sufficiently referred to "specific reasons for the finding on credibility, supported by the evidence in the case record, and [is] sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186.

## V. CONCLUSION

Because any error in alleged failure to apply the appropriate technique for evaluating mental disorders is harmless, the ALJ properly considered Dr. Livingston's medical opinion, and the ALJ properly contextualized the credibility determination, Barron has not shown that the ALJ's decision is unsupported by substantial evidence or based on legal error. Therefore, the decision of the Commissioner is **AFFIRMED** and Barron's complaint is **DISMISSED**.

Dated July 7, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**